## McCOY vs. ODOM.

1. The retaining possession in this State of personal property for three years, under a loan made in another State, is within the second section of the statute of frauds, unless the loan is recorded pursuant to its provisions. (Clay's Dig. 254–5.)

2. The possession of the husband, under a loan to his wife and children, is the possession of the loanee within the second section of the same statute.

3. Where the donees of personal property are minor children, residing with their father, the possession of the property by the father will be referred to the title of the children, and is not within the second section of the statute of frauds, although it may have commenced under a loan to his wife and children, *and there was no actual change of possession.*

4. Possession of personal property for three years under a loan, does not subject it to the debts of the party who has possession, unless his creditor, while it is thus held, acquires a lien on it by reducing his debt to judgment and taking out execution.

5. On a trial of the right of property in slaves between the plaintiff in execution and the minor children of the defendant, the claimants cannot prove that it was a matter of public notoriety in the neighborhood, that defendant disclaimed all interest in, and ownership over, the slaves.

ERROR to the Circuit Court of Russell.

Tried before the Hon. E. Pickens.

This was a trial of the right of property of certain slaves, which had been levied on by an execution in favor of the defendant in error against one Hudson. The levy was made on the 29th November, 1849, and on the trial there was evidence conducing to prove, that the slaves levied on were originally the property of one Stegers, in the State of Georgia, who was the father-in-law of Hudson, and the grand-father of the claimants; that he loaned the slaves by parol to his daughter, the wife of Hudson, then in life, and her children, for their especial use and benefit, but with a special reservation of the right of property to himself, being at the time a citizen of, and resident in, the State of Georgia; that the slaves were brought into this State, and remained here about eight or ten years, in the possession, or at the house, of the defendant in execution, with his wife and children, who were minors; that Stegers paid taxes regularly for the slaves in this State, and that the possession of Hudson was always accompanied

with a disclaimer of any ownership to the property on his part, and by declarations that they were the property of Stegers, and loaned to his wife and children; that Mrs. Hudson, the wife, died in January, 1848, and that after her death, Stegers made a deed of gift of the slaves to the claimants, who were her only children—the slaves, the children, and Hudson, being in this State; that the deed of gift was executed in Georgia, and delivered to an officer of that State, authorized by law to record such instruments, to be recorded, and was there duly recorded; that the debt of Hudson to the defendant in error was created in April, 1848. The claimants offered to prove that it had been a matter of public notoriety in the neighborhood of the Hudson family, that Hudson always disclaimed any interest or ownership in the slaves; which was objected to, and the objection sustained.

The court charged the jury:

1st. That if the slaves were loaned in the State of Georgia, and subsequently removed to this State, and retained in the possession of the loanees, under the loan, for more than three years previous to the levy, although they were retained for the use of the wife and children, the property must be found subject to the execution, unless the loan was in writing, duly proved and recorded according to the statute of frauds of this State.

2d. That if the deed of gift was made in the State of Georgia, and duly recorded there according to law, and that before the creation of the debt of the defendant in error against said Hudson, and that said Stegers, at the time of the execution of the deed of gift, was a resident of the State of Georgia; yet if the property remained in this State subject to the control of the donees, for three years prior to the levy of the execution, without returning into the actual possession of said Stegers, the property must be found subject.

3d. That if the property in controversy was loaned to the wife and children of the defendant in execution, for their especial use and benefit, and went into the possession of the wife while living with her husband, that would be such a possession in the defendant in execution as to bring it within the statute of frauds of this State; and if the property remained in this State for three years prior to the levy of the execu-

tion, in the possession of said wife and children, that would be the possession of the defendant in execution, and in such case the property must be found subject, unless the loan was in writing, duly proved or acknowledged, and recorded according to the statute of frauds of this State.

The sustaining the objection to the testimony offered, and the several charges as given, were excepted to, and are here assigned for error.

Hooper, for plaintiff in error.

1. The loan was made in Georgia, and the *lex loci* must govern, no matter what the form of the contract may be. Lyde *et al.* v. Taylor *et al.* 17 Ala. 274; Adams v. Broughton, 13 ib. 731; Catterlin v. Hardy, 10 ib. 511; 5 Porter, 142; 10 Ala. 949; 17 ib 643; 2 Kent. 394, 458; Story's Conf. L. 219, § 262.

2. The possession of the father will be referred to the title of his children, who were minors, and resided with him. Sewall v. Gliddon, 1 Ala. 53; Thomas v. Wallace, 5 ib. 276; Maull v. Hays, 12 ib. 502.

3. The delivery of the deed to the proper officer for registration in Georgia, perfected the gift to claimants. McCutcheon v. McCutcheon, 9 Porter, 658; McRae v. Pegues, 4 Ala. 159; Sims v. Sims, 2 ib. 117; Phillips v. McGrew, 13 ib. 255; 8 Porter, 449; 12 Ala. 29.

4. The deed of gift operated as a revocation of the loan, and it was unnecessary that the donor should resume the actual possession. Maull v. Hays, 12 Ala. 502; 9 ib. 657; 4 ib. 204. The debt of the plaintiff in execution was not created until after the revocation of the loan.

5. The evidence of "public notoriety," as to the defendant's disclaimer of interest or ownership, was improperly rejected. Hill *et al.* vs. Duke, 6 Ala. 259.

Belser, *contra.*

1. The exception, as to the notoriety of Hudson's disclaimer of an interest in the property, cannot be sustained. School District v. Blakeslee, 13 Conn. 227; Iron Co. v. Bennett, 7 Cowen, 234; Goddard v. Pratt, 16 Pick. 412; Glover v. Millings, 2 Stew. & P. 28; Bank v. Parker, 5 Ala. 731; Tharp v. Herndon, 5 Porter, 382; Harris v. Taylor, 13 Ala. 325.

2. It is at least questionable, whether the deed of the donor was ever delivered to the donees. Durett v. Seawell, 2 Ala. 669; Caldwell v. Edwards, 5 Stew. & Por. 312.

3. The several charges given by the court to the jury, were proper ones; and the evidence shows no resumption of the possession of the property by the donor from the date of the loan to the execution of the deed. The case stood at the time of the levy precisely as if the deed had never been executed, so far as Hudson's creditors are concerned. Grissett v. Agee, 14 Ala. 354; Myers v. Peek's Adm'r, 2 Ala. 649; Maull v. Hays, 12 Ala. 499; Gay v. Mosely, 2 Monr. 543; Morris v. Bradford, 4 Ala. 204.

GOLDTHWAITE, J.—The question presented on the first of the several charges given is, as to the effect of that portion of the second section of the statute of frauds of this State in relation to loans. The clause referred to is in these words: "And in like manner, where any loan of goods and chattels, shall be pretended to be made to any person, with whom or those claiming under him, possession shall have remained for the space of three years, without demand made and pursued by due course of law on the part of the pretended lender; or where any reservation or limitation shall be pretended to have been made of a use, &c.; the same shall be taken, as to the creditors and purchasers of the persons aforesaid so remaining in possession, to be fraudulent within this act, and that the absolute property is with the possession; unless such loan, reservation, &c., were declared by will, or deed, in writing, proved and recorded as aforesaid;" and it is insisted that, as the charge concedes that the loan in this case was made in another State, where the lender and the borrowers resided, and where the subject of the loan was located, upon this state of facts the property, after its removal by the borrowers voluntarily into this State, is exempted from the operation of the clause of the statute referred to. The rule that the validity of a contract is to be determined by the law of the place where it is made, which is relied on to sustain this position, is recognized to its fullest extent; but the error of the argument consists in its application to the case under consideration. The rule itself, it is to be remembered,

32

has its foundation on principles of comity, rather than right, and creates no binding obligation on a community, to enforce a contract which is injurious even to its own interests, much less one which is in opposition to its laws. It is certainly competent for Alabama to provide to what extent property within her limits shall be subject to execution, or in what manner, when brought within her jurisdiction, it is to be affected by certain acts. This is done by every statute of limitation or repose which is passed by her Legislature, conferring the title to property on the party in possession; and the idea that by the rules of comity, which are always based upon just considerations of public policy, property voluntarily carried within the limits of a foreign jurisdiction is entitled to immunities which are not bestowed upon its own citizens, or exempted from consequences to which they are exposed, cannot be entertained. In view of the facts presented, the question does not involve the validity or enforcement of a contract made in another State; it is simply determining the legal consequences which, by a statutory provision, attach to a certain act committed in this State. The clause of the statute we are examining, in the language of Collier, C. J., in the case of Myers v. Peek's Adm'r, 2 Ala. Rep. 648, "provides the manner in which one person shall retain his right to personal property, which he permits to go into the possession of another, and declares that if the directions of the act are not observed, the claims of creditors shall prevail, after the possession shall have continued under the loan for three years. Such a possession authorizes a legal conclusion in favor of creditors, which cannot be gainsayed." These reasons are equally as applicable to loans made out of the State, as to those made within its jurisdiction.

We are aware that the reasoning of this court, in the cases to which we have been cited by the counsel for the plaintiff in error, Catterlin v. Hardy, 10 Ala. Rep. 511, Adams v. Broughton's Adm'r, 13 Ala. Rep. 731, and Liden v. Taylor, 17 Ala. Rep. 270, as also the case of Turner v. Fenner et al. 19 Ala. Rep. 355, deciding that the continuance of the possession for three years in this State without recording, does not affect the title of the remainder-man, as to creditors and purchasers from the party in possession, on the ground that in

the particular cases referred to, the deed creating the remainder was executed in another State, is in opposition to the conclusions which we have attained; but we all concur that the reasons on which those decisions are based cannot be sustained; and while we feel constrained to adhere to the rule established by them, we prefer to rest it on the ground on which the decision of this court in Smith v. Ruddle, 15 Ala. Rep. 28, is placed, which restrains the meaning of the words "absolute property," as used in the second section of the statute of frauds, to the title which the 'lender had in the property. It follows, that if the lender had the absolute ownership of the property, the fact that the loan was made in another State cannot avoid the consequences, which result from the continuous possession in this State, by the borrower, for the length of time required by and under the circumstances defined by the statute.

Upon the assumption that the loan was made to the wife and children, the slave having come into the possession of the husband, it is the same in legal effect as if the loan had been directly to him and the children, Maull v. Hays, 12 Ala. Rep. 499; and we entertain no doubt that where a loan is made to two, or more, and the possession remains with one under the loan, and the other circumstances required by the statute to render the possession absolute as to creditors exist, that the property can be levied on and sold. We would not be understood as deciding here, that the interest of the other loanees would be divested, but simply that in the particular case put, the property could be levied on and sold on execution against the borrower in possession, leaving the other question open. It follows there was no error in the first charge given.

2. The instructions given by the court, that if the possession once commenced under that clause of the statute of frauds of this State which refers to loans; such possession would not be affected by a gift of the same property made in another State, unless the same had been returned into the actual possession of the owner, was erroneous. It cannot be doubted that if the possession of Hudson, under the loan, had terminated, and the possession of the property passed to the children under a valid gift, before the creation of the debt to the defendant in error, that under that state of facts the prop-

erty could not be subjected to the payment of the debt of Hudson. Maull v. Hays, 12 Ala. Rep. 499. The execution of the gift, would in law be equivalent to the resumption of the property for the only purpose for which, in such case, it could be required, to transfer its possession to the donee; and to establish the gift, all that was required to be proved was, a declaration of intention by the donor, united with his parting with his right of dominion over the property in favor of the donees. 2 Ala. Rep. 117. It was not in any manner essential to the validity of the gift, to prove an *actual* resumption of the property by the lender. If the gift was valid and complete, the children being minors and residing with their father, his possession would not in that case be inconsistent with their ownership. Sewall v. Gliddon, 1 Ala. Rep. 52. The question as to the validity of the gift should have been submitted to the jury, with the necessary instructions, and if upon the evidence the possession of the father was referable to the gift to the children, it would have been withdrawn from the operation of this clause of the statute; while on the other hand, if there was no gift, either from the failure to deliver the deed, or from the want of any other circumstance necessary to its validity, and the possession of Hudson was properly to be referred to the loan, the consequences which, in the previous part of this opinion we held, must attach to such possession, would necessarily follow. This part of the charge amounted to instructions to the jury, that the commencement of the possession under the loan rendered it necessary for the lender to resume the *actual* possession of the property, before he could legally dispose of it by gift, which would be valid as to creditors who had not then acquired liens on the property, and in this it was erroneous.

3. The legal principle asserted by the third part of the charge was also incorrect, in making the right of the defendant in error to condemn the slaves to the satisfaction of his claim, depend entirely on three years prior possession, and the failure to record, without reference to any other fact. The defendant in execution may have had three years possession in this State under the loan, without any rights resulting to a subsequent creditor. If the possession of the defendant in execution under the loan had terminated, as in this

case the evidence conduced to prove, before the creditor acquired a lien on the property, by reducing his debt to judgment and taking out execution, under the decision previously cited of Maull v. Hays, the property, after such change of possession, would not be subject to the debts of the creditor under this clause of the statute. The tendency of the charge in this aspect was to mislead the jury, by instructing them in effect, that if the defendant in execution, Hudson, had been in actual possession of the property for three years before the levy, it was sufficient to condemn the property, although the evidence may also have shown that his legal possession terminated before the execution debt was contracted.

As to the evidence objected to, the action of the court was correct. At the most, it could only have been admitted as a fact, from which the creditor might have been presumed to have had notice of the true condition of the property, and in this aspect we do not consider it as admissible. It follows, that for the error of the court in the second and third instructions, the case must be reversed and the cause remanded.